The next case on the calendar is Capital Access Services v. Direct Source Seafood. Good morning, may it please the Court. The District Court erred in granting this motion to dismiss for three fundamental reasons. First, the District Court did not give the presumption of truth to the allegations in the complaint, most critically that Everbank took over a revolving line of credit and therefore became a lender involved in that funding. Instead, the District Court drew inferences against the plaintiff, giving a definitive and adverse interpretation to what was at most an ambiguous phrase in the contract. Second, the District Court assumed that the plaintiff did not perform the required brokerage services. But the subsequent financing clause at issue here concerns additional consideration for work that the plaintiff undoubtedly did in delivering an acceptable financing facility. The broker did the work that was involved in closing the $15 million facility, Your Honor, so that would be the first financing facility. We said the subsequent one, that's the $45 million one. And the subsequent financing is the $45 million, that's correct, Your Honor. Third, the District Court effectively rewrote the contract to ask whether Everbank was the lender involved in the original closing. It was not, but that's not the contract language. Explain how the District Court made a legal error. How was Everbank involved in the original funding or closing of the HBB loan? So Everbank took over that loan by assignment and therefore assumed all the rights and obligations of Hudson Valley Bank, including the obligation to provide funding of this revolving line of credit in keeping with the terms and conditions of the first credit agreement. So on this motion to dismiss, we haven't had discovery, and the first credit agreement is not actually a part of the record before this court, but the plaintiff is entitled to reasonable inference and has alleged that it was a revolving line of credit, which I don't think is in dispute. I find very strange in this case is that in this, in which every issue involves New York law, I find almost no citations to New York law. There is also an appellate division case, if you want it, 71 Appellate Division, second 416, which says that in situations where it's from A to B to C, that's not involvement, but that that is enough to be a, does not break the chain of causation. Now, you know, that's an I also find very little, some citation of district court cases, federal district court cases on whether there is a specific duty of a part of a broker or whether that is only a default rule. If it's a default rule, can that default rule be negated by the contract itself? Uh, now many of those cases are finders fees cases, which we all know in New York law is easier. Some are not, but the whole area is remarkable in this argument because there's so little focus on what the law is that ultimately determines. I just don't understand what the heck is going on. And your beginning argument about, uh, again, doesn't really help me on that. Well, Your Honor, I saw two different points in, in what you just said. One concerns the, the causative chain in terms of the broker performing his role in, in, uh, creating an introduction. And I think it's important that the, the alternative basis. So one basis for additional consideration is if it's any lender involved in the funding slash closing, but the alternative basis is if it was a broker introduced to the defendant DSS through the efforts of, and that through the efforts of is different than, uh, a broker, sorry, a lender introduced to DSS by, um, and it's broader than, so I agree that. How broad and what is that sufficient under New York? Right. And we agree that, that the assignment does not break the causal chain, especially since as a practical matter, the broker introduces people. I mean, there's a legal construction that the broker introduces the entities, but he does so by introducing people. What cases do you cite me on New York that say that it does not break the chain of causation? I agree with Your Honor that neither side has cited any case particularly on point. And if I assume counsel did as well, um, to the extent that there is anything in the record. However, I would like to draw the court's attention to a 37. This is the second credit agreement, which has very standard language here regarding the definition of lender, um, as including their respective successors in the signs. And so since the first credit agreement is not in the record, I'm only asking the court to draw reasonable inferences in the plaintiff's favor, uh, to say that the assignment of the first credit facility to defendant Everbank, um, did not break the causal chain, but indeed made Everbank a lender involved in the funding of the first credit, uh, facility. Well, there's a lot of money involved in this case. We're talking about a difference between the, you know, uh, on the, the share of 15 million and 45 million and so on. So, but this isn't a, a case where, uh, the game may not be worth a candle of getting it right, right? I mean, there's, this is a couple hundred thousand dollars at the end. It'd be 400. The broker's fee was 1%. That's right. So it'd be $450,000 is the amount. You're arguing for the, you want to get the fee on the $45 million, which would be $450,000. That's correct, Your Honor. Um, and, and just to make sure I understood your argument, you, that supports the argument, the causation argument that, uh, what your client did was, uh, go to HBB and the employees of HBB then moved to another bank, um, Evergreen and, and that's when the next facility took place, uh, occurred. And you weren't able to find any New York cases that saying by introducing, uh, uh, uh, direct seafood to the first bank, when those employees move, you should be able to, to follow that chain to the second bank. That's correct, Your Honor. Neither, neither side has cited a case law that was directly on point for that question. You say that there, that that is the law, but you don't cite as New York law and you don't cite the one case that actually cites, comes out for you. Thank you for finding that, Your Honor. Um, you're correct. Neither side has cited law on that. We're basically, we are in our briefs. We've been relying on the contract language itself. Um, and the fact that it was, it was broader than the district court interpreted it, especially at the motion to dismiss stage. Uh, the second question that Your Honor had raised earlier was regarding what work the broker has to do to be entitled to his fee. And again, we had relied primarily on the, the language of the contract itself. So looking at page 825, the brokerage agreement, um, I'll note that it shows here what the broker is going to do. Language, the language suggests that this might be due regardless of whether there is a specific additional, uh, action. That's correct. And so my question is, does New York in this situation say that more is required of a broker period, regardless of what the language says, or does New York say that that is the default rule that, uh, the broker must do more unless a contract language allows you to do, uh, something less. And there, uh, there are a fair number of New York cases that speak to this in the context of finders. It's quite clear that the contract that is only a, uh, default rule. There are some cases that are not finders that suggest it may be a default rule as well, although that is not, uh, spelled out quite as clearly either. But that's basically the, the issue which other side will have to address. That's right. I see that I'm out of time, but, uh, I agree with Your Honor that there's, there's no New York cases that show that the contract should not be interpreted as it's written. Thank you. Your Honor, Jerry Krause. I represent the, um, the direct source, uh, excuse me, direct seafood and the individual defendant who were the original lenders here. And I did look for, for the law that you were requesting and that we did, I did not find a single case in New York which permitted the kind of, um, of, of, uh, jump, jumping from one bank to another, being deemed one continuous transaction in the context of a broker. Well, you'll have to read this different case, which is a complicated case. There are other things going on in it, but there is language in that case that, uh, that is certainly suggestive, uh, of the opposite conclusion from yours. So we're left in a situation where we don't really know what, uh, uh, what New York wants to do in a situation that, you know, you could go either way. Well, I, I don't think it could go either way because I think you have to add to that question what the language says in the agreement, number one. And I'll get back to the cases in a second, but the language is very clear. It talks about an original funding slash closing. And that's a term of art in these kinds of loans. The, that, that it's talking about what happened on that one day. It's not talking about what happens for the life of the loan. In fact, the, the plaintiff was paid his... So that would answer the, uh, your adversary's point about, um, the, uh, uh, definition of lender in the later agreement. Yes. So it doesn't really matter that it's been assigned. Here, original funding and closing means at that point. Correct. And if you look at the actual agreement, it's, it's mentioned in a number of places. In fact, the plaintiff got their entire, um, commission on the entire $15 million the day of the closing. Uh, it didn't matter that, that amount wasn't going to be funded or it was funded by somebody else. They said, whatever happens to this loan from now, we did what we needed to do right now. And the, um, it talks about the time of closing. Should this loan not close and fund, then it's refunded. So the whole concept of a, of the original closing funding refers to what happened on that day in, um, Hudson Bank. So that language of the agreement, I think would override any New York case, which said, well, you know, in some other situation, it could be a, it could be, um, there, the lender could be, stand in somebody else's shoes and the problem. If I, correct me if I'm misunderstanding, but I thought there were two ways your client, uh, could potentially be liable for the commission. And you're, you've addressed one very ably. Uh, but what about the other language of, uh, lender introduced to DSS through the efforts of CAS? Yes. And, and the, the concept there, there's really two answers to that. One is it has to be And as you mentioned, they're looking for a lot of money in this situation. And the, the, the happenstance that a group of employees move from one bank to another bank, um, isn't, didn't have anything to do with what the plaintiff did. And as the judge below said, there were several. So just help me with this point that you're making. If Mr. Murphy, Fignani and Owings were the principals of bank one at the time of, uh, the original closing, and then they, uh, uh, on, uh, the next day they formed their own bank. They're the only principals, uh, in effect, aren't they the same? No. And there's a big difference between what you just suggested and what happened here. And it really has to do. I understand that, but it's. No, no. But, but let me explain why. The, what this clause was meant to do, and that's what the plaintiff says it was meant to do, was to protect from a situation where, um, they really negotiated for a bigger loan and they were somehow deprived of their fee because of that kind of a machination. That's not what happened here. This was two years later. The language of the contract could certainly be read on this second point. You know, the first point, I think the language is very much as you say, but the language on the second point kind of reads, if you were the one who introduced us, then this, uh, you are, uh, you get this benefit. And, uh, I'm, I, I can't read offhand that language as easily to say only with respect to this first step. Uh, and, uh, indeed, I think it could even be read. I'm not saying it should be read even to, uh, override any notion that there has to be a specific piece of work for the second, if New York allows that. Well, I don't, as I said, I don't think New York does allow that and it isn't as if this was a continuation of the loan. There were months and months of negotiations for this particular loan. The broker not only had nothing to do with that, but once they even found out about the loan, they sat back and then it waited until it closed and said, oh, you know, we, we should get some money here. But the, but the language, again, going back to the language, is to be introduced to a lender. They didn't even know that these guys had gone to Everbank. They didn't know, they'd had nothing to do with, um, with my client going to, uh, Everbank and saying, you know what, I'd like a loan now. So, so your argument is that, uh, Everbank was not, there's no way to read this language to say that Everbank was introduced to your client through the efforts of CIS. That's correct. Uh, that it was a fortuity, some employees moved and, and, uh, Everbank gets the business. Correct. Um, is there enough ambiguity about this question that we should think about certifying? No. Absolutely not. I mean, I, I just don't see how, when you have an, an agreement that says introduced to a lender, um, the, the, if, if you were to read that kind of language to be premised upon what employee happens to go where when, and that would entitle somebody to, um, to monies that they had nothing to do with. They didn't introduce them to the bank. They didn't introduce them to the, the loan. They had nothing to do with the loan. Um, you're, it's, it, it makes the, the language, which is clear, you introduce to the lender. Um, it doesn't mean that you introduce to the banker. Bankers move all the time. That would create a real ambiguity as so. There was some discovery that showed that Mr. Murphy, you know, that these three, uh, who relocated to ever bank, um, said, uh, Oh, we, uh, found out about this company, uh, through, through capital. And so we should, uh, and it was a very good experience. We should, based on that experience, uh, uh, extend this $45 million credit facility. Wouldn't that be enough to show that capital was then entitled to a, a fee? Not at all. Because, well, first of all, they, they. It's common sense. If, if that were the discovery, you, so you would disagree? Well, first of all, if that were, if it was in their minds, if anybody understood this agreement, either the bankers or my client understood this agreement to mean that it was included within this original brokerage deal, this loan closed nine days before the end of the two years. If they were really trying to, to cheat the, the plaintiff out of something, they would have just put off the closing for ten days. It was never in anybody's comprehension that this, that this, that this brokerage agreement could have possibly, um, applied to this new loan in this new place, and the, the bankers didn't see it, and they, and my client didn't see it in the language on the face of the document. It has nothing to do with the employees. And even if, if, if he did, if the discovery did show, as you suggest, it still does not, um, allow the plaintiff to collect brokerage fees when they did absolutely nothing on a loan that had months of negotiations, a lot of work. But the problem is that the language to which we're all pointing you is not limited to sort of the classic brokerage, uh, language. It's an introduction. Yeah. But if it's an introduction, it's a finder. At New York Law, it's crystal clear. Why, why do you have the, the word, or have been introduced? Why, why is that there? It's, well, it's, it's, it's the, it's the, it's one, the first step in the, in the connection, but this is a brokerage agreement. Or, or have been introduced. You look, it's your contract. You could have limited it to just the brokerage part of it. What it says, it adds, or have been introduced to direct. And where in the... I keep reading, I keep reading that language, and I see lender at the beginning, and I said be, read introduced further on, and I keep asking myself, what is it that this means? And, and, and maybe, maybe it's ambiguous. Maybe we don't know, uh, what it means as a matter of New York Law, particularly when it's ensconced in the context of a brokerage agreement. And maybe we should certify. I don't know, but you're helping me. But the, the, well, I, I, sorry to hear that, but the, um, uh, the, the, even the finders cases in New York don't allow simply an introduction necessarily to be enough if they're two different transactions. I mean, the one case that was cited and that the judge below dealt with, even though it was a brokerage case, there, there was a connection between the introduction and the particular deal they were looking at, and the deal shifted and it became a new deal. Even in the, um, uh, even in the, the finders cases, um, where there is a, a, a lesser, um, standard as to what you could use to have the, the, the connection, none of the New York cases, uh, that, that I found allow to jump from one deal, which was done. The deal that was contemplated was done. They were paid on that. Then in a few go to this jumping thing, then the fact that you don't either of you cite the friend, which is a case where there is jumping, uh, is troublesome to me because, uh, if the language is the way you say it is, if it didn't have it introduced, then we wouldn't get down that line. And that is the thrust of your main part of your argument. Once you have trouble with that, you start telling us with New York law, wouldn't mind do it anyway. And there I have much more problem because the New York cases, which none of you cite are anything but that clear. That's, that's where I get into trouble. Well, but the fact, if I read your language, the contract language is you do. Okay. But I have the same problems with worry at least, but there's no question this was a brokerage agreement and there is no law that we were able to find in New York, even with the, that the word, even with the word introduction, that would allow a recovery of a commission with respect to a loan that they knew nothing about. They, they did nothing on and the only connection was that they introduced them to an employee, maybe on a findings on a finder standard. Um, there, and I don't even think it would work on that because it's a totally different deal. There's no suggestion that this deal had anything to do with the, with, with the, with the, with the second loan. You're saying we should put, focus maybe more attention on the second part of the clause, introduced to your client through the efforts and all that has been alleged is but-for causation essentially. Well, the judge, the judge below said there was no but-for causation because it, there were so many things, there were so many intervening causes that also. I misspoke. Intervening causes don't destroy but-for causation. They may destroy proximate cause, but intervening causes don't destroy but-for causation. I'm sorry. I, I, I just teach torch too much to let anybody say that, that, that doesn't really. But it, it, it still doesn't, it doesn't, it doesn't turn a, it, it, it doesn't, um, again, the, the, the fact that an employee moves and that move had nothing to do with the plaintiff, um, the continued, um, discussion of the, of the loan had nothing to do with the plaintiff, if that were the rule, as I, as I said, then it would, it would open up floodgates to, which I, prior, uh, advocate was talking about, to, there would be no certainty because this was talking about the lenders and it was talking about this deal. And just because the bankers move all the time, so if somehow or other a new bank, um, uh, assumed, uh, uh, the status of the old bank for purposes of brokerage deals, it, it would, it would really undermine the understanding of the parties in, in this, um, in this situation, certainly. Good morning, Your Honors. May it please the Court. My name is Craig Steinfeld. I'm an attorney with the law firm of Sherman, Wells, Sylvester & Sammelman, and my firm represents Everbank. And fortunately for my client, my client was not a party to the brokerage agreement. Um, the claim, the one claim against my client is that somehow it tortiously interfered with this contract by, I suppose, making this $45 million loan almost two years later and including in the, um, loan documents a statement that no brokerage commission was due. That's the sum total of... How, how that, this is really more addressed to the other side that didn't, how that can constitute in any way an inducement to breach, uh, is something that I have trouble seeing. So, so do we, Your Honor. I should sit down. Um, but, but, uh, I, I, I, I, I may be the last of the nine. Yeah, but, but, but Your Honor, what's, what's important here also is if you look at the allegations of the complaint, and this was a motion to dismiss the complaint, the only allegations against Everbank with respect to tortious interference are they knew about this commission agreement and that they included this language in the, in the loan documents. What's important, and the, and the loan documents are in, um, the loan documents, it starts at, let me just get the page for you. Actually, let me just, I'll cite you to the relevant page. It's A87, it's section 6.18 of the loan agreement for the second loan, the Everbank loan. It says there are no brokerage commissions, finder's fees or investment banking fees payable in connection with any transactions contemplated by the loan documents. What's important about this provision is it is part of the section that starts on A83 that are representations by the borrower, DSS. So in this loan document, regardless of who drafted it, the signed loan document has a representation from the borrower saying no commissions are due. There's not a single allegation in the complaint, in the complaint, for Everbank's involvement, the borrower would have paid this commission that the plaintiff claims he's due. Which I think, I'm sorry, Judge. It's hard to see that there is an allegation that you did anything that, uh, induced anyone. So. In, in fact, Your Honor, again, at the risk of, I should just sit down, um, the, the, the allegations, the allegations in the complaint say that right before the Everbank loan closed, Everbank told plaintiff about this loan. So someone that's going to tortiously interfere with a, um, uh, an obligation to pay a commission, um, would, it's implausible that one would would reach out to the party that is going to be detrimentally affected by that and say, hey, by the way, I'm closing this loan. One other thing. The section also that you alluded to on, what was it, 87, uh, 6.18. Yes, Your Honor. Um, refers to finder's fees. Is that an, uh, an ordinary, uh, reference? Is that usually put in this, uh, the, the brokerage, no brokerage commissions section? I, I don't know, but I presume that this is standard language. Um, and the, the one other point I'll raise and then I will sit down. There was no benefit to Everbank to tortuously interfere with this contract. Everbank had no obligation under the brokerage agreement to pay a commission. That's the borrowers. And, and I, I do think that, um, my colleague is correct and I don't think there was a breach here. And, and that breach is the ticket that gets you into the tortuous interference discussion. But beyond that, assuming for the purposes of this argument and for the motion dismissed it was before the district court, um, there, there was no potential benefit. Is that a necessary part of a tortuous interference? Oh, a benefit to, to the, no, I don't think so, Your Honor. But, but it's, but here. I didn't think so either. No. Why, why do you think? It certainly is relevant to understanding what is going on. Uh, but you could have a tortuous interference situation where somebody just maliciously or for the heck of it wants to do that. I, I, I don't disagree, Your Honor. But since you brought it up, uh, what is, what is your argument that your bank, your client wasn't introduced to DSS through the efforts of CIS? The lenders were. H, uh, Hudson Valley Bank was the first lender. Ever Bank was the second lender. Employees are not lenders. Okay. And Your Honor's question, I, I understood Your Honor's question and it might be different. It might be different if the lenders were that, those three guys. So, so what's announced is a very bright line rule that I'm, I'm comfortable with because I could see any number of different scenarios where the bright line rule collapses, uh, and it makes sense to call that the lender. But, but Your Honor, I refer you back to the contract in this case. This contract was very specific. It talked about an initial closing. It talked about any lender that was involved in that initial closing and funding. The allegations that were played are very clear. One lender, Hudson Valley Bank was the one lender that was involved in that initial closing that was the initial, that was initially funded. That's all. The, the second part is, uh, whether there was an introduction. I agree with my colleague that the, the intervening events between the initial loan, the initial introduction, um, uh, the plaintiff did introduce the borrower to Hudson Valley Bank. There's no doubt about that. That's undisputed. But they don't, when, when those employees move to a different bank and almost two years later make this loan. And again, as we've heard, you know, this is, yeah, yeah. And the question is what, how far does that introduction go? Right. And just to sum up, but with respect to my client, the only claim against my client is tortious interference. We think the allegations don't meet that standard. Thank you very much. And we've made a lot of arguments for you. Can you make a few yourself? Yes, Your Honor. Uh, first the respondents like to, uh, hammer home the fact that the plaintiff did not do any of the work on the second financing agreement. So again, I want to draw the court's attention to the structure of the contract, which says the plaintiff is to deliver an acceptable financing facility to DSS. And should the plaintiff succeed, it is agreed as follows. And then there are numbered paragraphs setting forth the consideration, which includes the subsequent financing. Where are you, where are you reading from? Um, this is A25. I'm looking at the brokerage agreement. The top two paragraphs describe, well, the top paragraph describes what the plaintiff has to do. And then it says, should the plaintiff succeed in the placement of such financing, it is agreed as follows. I'm Uh, and then the numbered paragraph set forth the consideration and paragraph four is the subsequent financing clause at issue. So by the structure of this contract overall, it's quite clear that the plaintiff did not have to do all of the brokerage work on the second financing facility in order to be entitled to the additional consideration described in paragraph four. Are you saying that this, whatever the terms is really more like a finder's agreement than a brokerage agreement? Overall, this is a brokerage agreement, but the, there is certainly the alternative basis for the additional consideration in number four or have been introduced to DSS. That's right. And this, but the phrase for the additional consideration clause or have been introduced to DSS through the efforts of CAS does sound more like a finder act than a, than a broker act, but that would not entitle the broker to any consideration, but for the brokers having done all the broker's work to close the first financing facility, which is the basis for all these numbered paragraphs that set forth the broker's consideration. Now the, the second point I want to address is that council has said original funding slash closing is perfectly clear and it's a term of art. If it's a term of art, then we don't have any information in the record about industry standard that we can use to interpret what that means. But secondly, I think it's completely unreasonable in the context of a revolving line of credit to interpret original funding as a discrete event that happens on one day. I think that original here in the context of this agreement refers back to the first financing facility. Oh, that's a slash closing. Right. So we, we, we read that as the original funding or closing, meaning the funding or closing of the first financing agreement. The closing took place on one day, but the funding did not because it was a revolving line of credit. Uh, what do you say to that, which is not really a legal argument, but which is persuasive in some ways that, uh, all this second thing was done within seven days of the end of the two years. And that if they had any notion on this contract, uh, that, uh, there might be this remarkably high liability, they would simply have waited seven days to close. Now, you know, that isn't, it's in the record so that it's something we can look at. It isn't exactly a legal argument. Uh, but what do you say to that? Well, I think as far as the breach of contract claim that that's completely irrelevant. If you're unaware, uh, that you have a contractual duty and then you learn later that you could have maybe dodged it. Although I think we would have had some equitable, uh, maybe some equitable arguments. Certainly our case would be drastically weaker had that happened. Um, let's go to how they fought the contract should be interpreted. Assuming that they were thinking about the contract at all. It, it may your honor. I don't, I don't know what weight we give to it. You're, you're relying on the language of the contract. So that's correct. You have a motion to dismiss. Yes. Correct. Thank you. Thank you very much. Thank you Beth. Oh, well, well, we've been rather rough on you, but that's our job. So